UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DUTCHMAID LOGISTICS, INC.**, *et al.*,

    **Plaintiffs,**

  v.

    Civil Action 2:16-cv-857
    Judge Michael H. Watson
    Magistrate Judge Elizabeth P. Deavers

**NAVISTAR, INC.**,

    **Defendant.**

## REPORT AND RECOMMENDATION

This matter is before the Court for consideration of Plaintiffs' Motion to Remand to State Court. (ECF No. 7.) Defendant filed its Response in Opposition to Plaintiff's Motion on October 6, 2016. (ECF No. 8.) Plaintiffs filed their Reply to the Opposition on October 20, 2016. (ECF No. 13.) For the reasons that follow, it is **RECOMMENDED** that Plaintiffs' Motion be **GRANTED**.

### I. BACKGROUND

Plaintiffs Dutchmaid Logistics, Inc., PCM Transport, LLC, and Mark R. Lewis, LLC (collectively, "Plaintiffs") are logistic companies and owners of commercial trucking fleets. (ECF No. 2; the "Complaint" or "Compl." ¶¶ 7-12.) All Plaintiffs are citizens of the State of Ohio. (*Id*. ¶¶ 1-3.) Plaintiffs initiated this action on February 12, 2015 by filing an original complaint in the Licking County, Ohio Court of Common Pleas. (*Id*.) Plaintiffs brought claims against Navistar, Inc. ("Defendant" or "Navistar"), a Delaware-based manufacturer of trucks and other equipment, including International brand heavy-duty commercial trucks and Maxxforce

brand diesel engines, and Truck Sales & Service, Inc. ("Truck Sales"), an Ohio corporation that sells and services Navistar trucks and equipment, including International trucks and Maxxforce diesel engines. (*Id.* ¶¶ 10-12.) Plaintiffs brought the following claims against Navistar and Truck Sales: (1) breach of express warranty; (2) breach of implied warranty; (3) breach of contract; (4) fraudulent misrepresentation; and (5) fraud. Plaintiffs' action is based on Defendants' alleged misconduct based on knowledge of the flawed MaxxForce engines, and failure to fulfill warranty obligations. (*Id.* ¶¶ 77-126.)

After months of discovery, Truck Sales filed a motion to dismiss under Ohio Rule of Civil Procedure 12(b)(6) on August 19, 2016. (ECF No. 7-4.) On September 2, 2016, Plaintiffs voluntarily dismissed Truck Sales from the State Court action. On September 7, 2016, Navistar filed a Notice of Removal from State court on the grounds that Plaintiffs acted in "bad faith," pursuant to 28 U.S.C. §1446(c)(1), for failure to actually litigate against Truck Sales. (ECF No. 1.) In the alternative, Navistar claims that Truck Sales was fraudulently joined to destroy diversity. Plaintiffs subsequently filed a Motion to Remand to State Court on September 12, 2016, asserting that neither bad faith nor fraudulent joinder exist such that removal was proper. (ECF No. 7.) The Motion to Remand is now ripe for review.

## II. STANDARD OF REVIEW

Generally, a civil case brought in a state court may be removed by a defendant to federal court if it could have been brought there originally. 28 U.S.C. § 1441(a); *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000). A federal court has original "diversity" jurisdiction where the suit is between citizens of different states and the amount in controversy

2

exceeds $75,000.00, exclusive of costs and interests. 28 U.S.C. § 1332(a). *Rogers*, 239 F.3d at 871.

When an action is removed based on diversity, a federal court must determine whether complete diversity exists at the time of removal. *Coyne v. American Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999). "Diversity jurisdiction attaches only when all parties on one side of the litigation are of a different citizenship from all parties on the other side of the litigation." *Id.* (quoting *SHR Ltd. Partnership v. Braun*, 888 F.2d 455, 456 (6th Cir. 1989)).

If the case initially is not removable under the above standards, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable. 28 U.S.C. § 1446(b)(3). Removal based upon diversity jurisdiction may not be sought, however, more than one-year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action. 28 U.S.C. § 1446(c)(1).

The Sixth Circuit has not clearly defined the meaning of "bad faith" in the statute. Federal courts that have examined the statutory language, however, agree that the issue is whether the plaintiff engaged in intentional conduct to deny the defendant the chance to remove the case to federal court. *See Hiser v. Seay*, No. 5:14-CV-170, 2014 WL 6885433, at *4 (W.D. Ky. Dec. 5, 2014); *Taylor v. King*, No. 5:12–CV–1, 2012 WL 3257528 at *4 (W.D. Ky. Aug. 8, 2012); *Ehrenreich v. Black*, 994 F. Supp. 2d 284 (E.D. N.Y. 2014) (discussing the statutory language and finding that the "bad faith" exception was not met because the plaintiff did not take any actions intended to prevent removal).

## III. ANALYISIS

### A. Navistar's notice of removal was timely under § 1446(b)(3)

Under §1446(b)(3), a notice of removal must be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. It is not disputed that Plaintiff's voluntary dismissal of Truck Sales on September 7, 2016 constitutes "other paper." (ECF No. 7, at 3.) It is also not disputed that Navistar filed its Notice of Removal within 30 days after receipt of that dismissal. Therefore, diversity of parties did exist at the time of removal.

### B. Plaintiffs did not act in bad faith by keeping Truck Sales in the state case

Plaintiffs first assert that the case should be remanded back to state court because it was removed nineteen months after it was filed. (ECF No. 7, at 4.) Under 28 U.S.C. §1446(c)(1), a case is only removable if the notice of removal is filed within one-year of the commencement of the suit. The suit commenced on February 11, 2015 and it was removed nearly nineteen months later on September 9, 2016, beyond the one year limitation.

Defendant Navistar argues that the exception in §1446(c)(1) exists in this case because Plaintiffs acted in bad faith to avoid removal. Plaintiffs' conduct here, however, does not equate to that of bad faith under the requisite statutory meaning. Defendant relies heavily on *Comer v. Schmitt*, No. 2:15-cv-2599, 2015 WL 5954589 (S.D. Ohio Oct. 14, 2015), and *Hiser*, 2014 WL 6885433, at *4. This case is, however, demonstrably distinguishable from that of the plaintiffs in *Comer* and *Hiser*. In both of those cases, the diverse defendants could point specifically to

action or inaction on the part of the plaintiffs to hold the non-diverse defendants in the suit, conduct that is absent in this case.

Navistar's position would necessitate that the Court to delve into semantics of the Complaint, as well as their legal strategy—a level of scrutiny that is not contemplated by the burden of showing required by the exception in §1446(c)(1). Navistar argues that the Complaint's allegations were directed against Navistar, yet this contention overlooks the allegations involving Truck Sales. For example, the Complaint alleges that Truck Sales acted as agents of the original Defendants, relaying representations regarding Maxxforce trucks directly to Plaintiffs on the Defendants' behalf. (Compl. ¶¶ 49-51.) These representations, Plaintiffs alleged, were made to induce them into purchasing said trucks. (Compl. ¶ 51.) The Complaint, therefore, belies Navistar's assertion that no substantive allegations were made against Truck Sales, such that claims against it were brought in bad faith.

Navistar further argues that Truck Sales was named as a defendant in place of two other non-diverse dealers that could have been included in the suit, solely to destroy diversity between parties. (ECF No. 8, at 13.) As additional purported evidence that Plaintiffs joined Truck Sales in bad faith, Navistar emphasizes that, despite production being six months late, Plaintiffs never moved to compel production of discovery requests made to Truck Sales. *Id*. Lastly, Navistar faults Plaintiffs because they deposed six Navistar Employees, but no Truck Sales employees. *Id*. The Court, however, does not find that any of these litigation-strategy decisions rises to the level of intentional action or inaction that prevented Navistar from otherwise properly filing for removal before the expiration of the one year period. *Cf. Hiser*, 2014 WL 6885433, at *4 (plaintiffs intentionally delayed acceptance of settlement offers from non-diverse defendants

5

until after one year removal date passed). With respect to the discovery requests, Plaintiffs' counsel communicated with Truck Sales on multiple occasions in order to seek responses. Ultimately, Truck Sales provided them, copying Navistar's counsel on the emails. (ECF Nos. 7-6. 7-7.) Both a decision to litigate against certain dealers but not others, as well as a decision to pursue extrajudicial methods to resolve discovery disputes do not constitute action or inaction within the requisite meaning of bad faith. As a matter of policy, the Court notes that, holding Plaintiffs' conduct to be bad faith under these circumstances, could encourage further litigation and open up the door for removal against plaintiffs who choose to negotiate and discuss discovery diputes with opposing counsel rather than file motions to compel simply to fight a potential removal action. The Court, therefore, rejects Navistar's claim that Plaintiffs' conduct was done in bad faith.

Lastly, Navistar urges the Court to adopt the standard for bad faith used in *Aguayo v. AMCO Ins. Co.,* 59 F. Supp. 3d 1225, 1228 (D. N. Mex. 2014). The standard is as follows:

> First, the Court assesses whether the plaintiff actively litigated its case against the removal spoiler in state court. A finding that the plaintiff did not actively litigate against the removal spoiler constitutes bad faith, and the Court will retain jurisdiction over the case. If, on the other hand, the Court finds that the plaintiff actively litigated against the removal spoiler, that finding creates a rebuttable presumption that the plaintiff acted in good faith. Second, the defendant may rebut the good-faith presumption, with evidence already in the defendant's possession, that the plaintiff kept the removal spoiler in the case to defeat removal.

*Id* at 1228-1229.

Navistar asserts that the test creates a "workable standard that district courts can readily apply without the need for a full-fledged evidentiary hearing." (ECF No. 8, at 5.) Additionally, Navistar contends that the current analysis of bad faith is subjective and is both "over-inclusive

6

and under-inclusive," and the *Aguayo* test limits the inquiry to an objective standard of determining "whether a plaintiff actively litigated against the non-diverse defendant." (*Id.* at 6.)

As Plaintiffs point out, the Sixth Court has ruled on cases regarding the bad faith exception after *Aguayo* was decided, and has not relied on this test. As a result, the Court finds it inappropriate to adopt the test now. *Aguayo* expressed concern with the consequences of the bad faith exception, including consequences resulting from its own test. 59 F. Supp. 3d at 1277. Specifically, the *Aguayo* test has the potential to deter plaintiffs from dismissing defendants they realize are not necessary, as well as force plaintiffs to request meaningless discovery to avoid the exception being exercised. Both risks increase the cost of litigation and could prolong and complicate the litigation process. Limiting the availability of the exception, rather than expanding it, would alleviate these concerns. The exception should only be afforded to those defendants who were helplessly stuck in state court because of the demonstrable bad faith conduct of the plaintiffs.

In an abundance of caution, the Court finds that, even if the *Aguayo* test were adopted, this Court would still remand it back to state court.

**1. Navistar cannot to show Plaintiffs did not Actively Litigate Truck Sales**

Active litigation can be proven by "discovery taken against different parties, the hours spent negotiating settlements, and any motion practice in which the parties engaged in state court." *Aguayo*, 59 F. Supp. 3d at 1275. To receive the rebuttable presumption of good faith, the litigation or discovery must not be "non-token." *Id*. In making a determination whether the litigation or discovery is non-token, courts must examine: "(i) the amount of time the spoiler spent joined to the case, . . . (ii) the size and money value of the case." *Id.*

Here, Plaintiffs served Truck Sales with ten interrogatories and 34 requests for production. (ECF No. 8, at 8.) Navistar contends that is relatively very little in contradistinction to the hundreds of requests for production that it received from Plaintiffs. In addition to the numbers discrepancy, Navistar argues, the discovery requests to Truck Sales were generic initial requests that were not particularized to the parties or the facts at issue in this case. *Id.* The Court is not persuaded though, that Plaintiffs' discovery efforts towards Truck Sales qualify as "token." First, Navistar is the primary Defendant in this case, and therefore, a difference in number and specificity with respect to discovery requests is to be expected. Second, the documents requested from Truck Sales were pertinent to Plaintiffs' claims against it; it is not relevant if the same discovery requests have been used against similar defendants in other cases. Navistar also points out that Plaintiffs deposed six of its employees and zero of Truck Sales' employees. Plaintiffs, however, are entitled to choose how they wish to litigate. One non-token rationale, for example, for the deposition schedule could be that Plaintiffs chose to work their way down in order of deponent priority from higher-up employees of Navistar.

Navistar also argues that the fact that Plaintiffs chose to voluntary dismiss Truck Sales, rather than prepare a response to its motion to dismiss, is indicative of only token litigation efforts. (ECF No. 8, at 10.) Again, as a matter of policy, the Court will not fault a party's choice to change its mind about pursuing certain claims in the course of litigation, as doing so would promote continuing to litigate even where a party reevaluates and is convinced it should not. "The Court does not want to open the plaintiff up to intrusions into its attorneys' strategy, their opinions about what avenues of discovery are likely to be fruitful, and their impressions regarding likely recovery from various defendants. . . ." *Aguayo*, 59 F. Supp. 3d at 1275. Thus,

the Court finds that the record reflects Plaintiffs did actively litigate against Truck Sales, creating a rebuttable presumption of good faith.

### 2. Navistar cannot point to direct evidence of bad faith

"If the plaintiff can establish that he or she actively litigated against the removal spoiler, the plaintiff is entitled to a rebuttable presumption of good faith." *Id*. at 1275. To rebut the good faith presumption, a defendant may offer "direct evidence of bad faith" that the defendant has on hand. *Id*. The defendant should show either "(i) that the plaintiff did not litigate at all, or engaged in a mere scintilla of litigation against the removal spoiler; or (ii) that the defendant has strong, unambiguous evidence of the plaintiff's subjective intent, for which the plaintiff cannot offer any plausible alternative explanation." *Id* at 1277. All reasonable inferences will be drawn in the plaintiff's favor because there is a "general presumption against removal." *Id* at 1276; *see, e.g.*, *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).

The Court finds insufficient evidence to rebut a presumption of good faith. Plaintiffs served Truck Sales with discovery, and participated in multiple court hearings with Truck Sales, including resisting Truck Sales' motion to have the case classified as complex under Ohio law. Navistar points to the timing of dismissal, arguing that it came "conveniently" after one year of commencement of the action. (ECF No 8, at 10.) "The timing of the events at issue, while unfortunate for the [remaining] Defendant[], are insufficient to show bad faith on the part of the Plaintiff." *WBCMT 2007-C33 Office 7870, LLC v. Breakwater Equity Partners LLC*, No. 1:14-CV-588, 2014 WL 6673712, at *7 (S.D. Ohio Nov. 24, 2014).

Navistar does not have any direct evidence showing that Plaintiffs did not litigate at all, or that they had a subjective intent which could not be rebutted with a plausible explanation. As a result, even if the Court were to adopt the *Aguayo* test, Navistar's argument would still fail.

**C.  Plaintiff did not fraudulently join Truck Sales to defeat diversity**

"To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Kent State Univ. Bd. Of Trs. v. Lexington Ins. Co*., 512 Fed. Appx. 485, 489 (6th Cir. 2013). "If there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, this Court must remand the action to state court." *Coyne ex rel. Ohio v. American Tobacco Co.,* 183 F.3d 488, 493 (6th Cir. 1999). "The burden is on Defendants to show joinder was fraudulent, and that burden is a heavy one." *Little v. Purdue Pharma, L.P.*, 227 F. Supp. 2d 838, 845 (S.D. Ohio 2002).

Navistar argues that removability was triggered at the point of Plaintiffs' voluntary dismissal of Truck Sales. Navistar posits that Plaintiffs originally pled a colorable claim, but later uncovered facts which revealed that Plaintiffs did not have a good faith basis to support the allegations and thus fraudulently joined Truck Sales. Here, the original complaint was filed on February 11, 2015, Plaintiffs' discovery requests were served on Truck Sales on August 26, 2015, and the First Amended Complaint was filed on July 20, 2016. According to Navistar, facts demonstrating that Plaintiffs did not have a good faith basis to support their allegations against Truck Sales were uncovered in through the discovery requests. The Court does not agree. Here, Plaintiffs asserted claims for breach of contract and fraud by nondisclosure against Truck Sales; Navistar has not offered evidence proving that Plaintiffs did not have a colorable claim against

10

Truck Sales. Navistar does not provide any evidentiary support for its argument that later-uncovered facts would discredit the claims against Truck Sales. As a result, its assertion that Truck Sales was fraudulently joined is unavailing.

**D.     Plaintiff is not entitled to an award of costs, fees, expenses, or sanctions**

When remanding an action to state court, a district court may require defendants to pay just costs and actual expenses that a plaintiff has incurred as a result of improper removal. 28 U.S.C. §1447(c). An award of costs and fees under §1447(c) is appropriate where the removing party lacked an "objectively basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Here, the Court finds Navistar's attempt to remove this action pursuant to §1446(c)'s bad faith exception was not objectively unreasonable. The law regarding the issue is unsettled in the circuit. Navistar's attempt to persuade the Court to join other circuits in adopting the *Aguayo* test demonstrates a reasonable attempt to remove the case. For the same reasons, the Court declines to impose sanctions under Rule 11.

## IV.     CONCLUSION

Because the Plaintiffs did not engage in bad faith conduct during its litigation with Truck Sales, the exception in 28 U.S.C. §1446(c)(1) does not apply. In addition, Navistar's fraudulent joinder claim fails because it did not meet its burden of showing that Plaintiffs had no colorable claim against Truck Sales. As a result, it is **RECOMMENDED** that Plaintiffs Motion to Remand be **GRANTED** and that this case be **REMANDED** back to the Licking County Court of Common Pleas. (ECF No. 7.)

## **PROCEDURE ON OBJECTIONS**

If any party seeks review by the District Judge of this Report and Recommendation, it

may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: April 11, 2017             /s/ *Elizabeth A. Preston Deavers*
                                 ELIZABETH A. PRESTON DEAVERS
                                 UNITED STATES MAGISTRATE JUDGE